IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| Jose E. Amstutz, | § | Civil Action No. |
| Plaintiff, | § | 4:23-cv-01787 |
| | § | |
| v. | § | Judge Charles Eskridge |
| | § | |
| Harris County, Texas, | § | |
| Sylvia Trevino, and | § | Jury Demand |
| Lillian Lozano | § | |
| Defendants. | § | |

# PLAINTIFF'S FIRST AMENDED ORIGINAL COMPLAINT

## A. Parties

1. Plaintiff, Jose E. Amstutz ("Amstutz"), is an individual that is a citizen of the State of Texas.

2. Defendant, Harris County, a governmental organization of a state, may be served by electronic service to the county attorney at CJOservice@cjo.hctx.net.

3. Defendant, Sylvia Trevino, is a resident of Harris County and may be served at her place of business at 5900 Canal Street, Houston, TX 77011.

4. Defendant, Lillian Lozano, is a resident of Harris County and may be served at her place of business at 5900 Canal Street, Houston, TX 77011.

## B. Jurisdiction

5. The court has jurisdiction over the lawsuit because the action arises under 29 U.S.C.A. §626(c)(1) and 42 U.S.C.A. §1983.

## C. Venue

6. Venue is proper in this district because the alleged unlawful acts were committed in this district.

7. Plaintiff was an employee of the Harris County Constables Office, more specifically Precinct 6, located in Harris County, Texas.

### D.  Exhaustion of Administrative Procedures

8. Plaintiff timely filed a charge of discrimination against defendant with the Equal Employment Opportunity Commission (EEOC).

9. Plaintiff files this complaint within 90 days after receiving a notice of the right to sue from the EEOC.

10. A copy of the notice of the right to sue and EEOC complaint is attached as Exhibit A.

### E.  Statement of Facts

11. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely male, and of a certain age.

12. Defendant is an employer within the meaning of Title VII.

13. The Defendant, Sylvia Trevino is the Harris County Precinct 6 Constable and is being sued in her personal capacity.

14. The Defendant, Lillian Lozano, is the Chief Deputy of Harris County Precinct 6 Constables office and is being sued in her personal capacity.

15. Defendant intentionally discriminated and retaliated against plaintiff because of his sex and age by firing him for reporting the making of a false police report given by his wife at the time.

16. Jose Amstutz is a Texas Commission of Law Enforcement (TCOLE) Licensed Peace Officer.

17. Amstutz was a specialized handling officer assigned with a K-9 partner.

18. Jose Amstutz and Nickolette Amstutz were married approximately April 2013.

19. Amstutz was employed with the Montgomery County Sheriff's Department in 2013.

20. On or about August 13, 2013, Jose Amstutz filed a petition for divorce suit against Nickolette Amstutz.

21. Soon thereafter, Nickolette Amstutz attempted suicide by overdose by consuming an entire bottle of Tylenol.

22. Nickolette's suicide attempt resulted in kidney failure and extended dialysis treatment.

23. Shortly after recovery Nickolette Amstutz filed her first false report, with Montgomery County Sheriff's Office, of alleged criminal behavior, namely domestic violence, by Jose Amstutz.

24. Amstutz was placed on administrative leave from Montgomery County Sherriff's Department and the case was referred to the Texas Rangers for investigation.

25. Nickolette Amstutz recanted her allegation, and the investigation was dropped.

26. Amstutz was reinstated to duty from administrative leave by Montgomery County Sheriff's Department.

27. Nickolette and Jose Amstutz reconciled, and the divorce proceedings were dismissed.

28. In 2015, Amstutz switched employment to Montgomery County Constable Office, Precinct 4.

29. In 2016, Amstutz filed, for the second time, a petition for divorce suit against Nickolette Amstutz.

30. Nickolette Amstutz, again, made a false report to Houston Police Department alleging criminal behavior, namely domestic violence, by Jose Amstutz.

31. Amstutz, again, was placed on administrative leave from Montgomery County Precinct 4 Constables Office.

32. Shortly after making her allegation, Nickolette Amstutz, sent an email to Jose Amstutz admitting she lied in her statement to Houston Police Department.

33. Amstutz forwarded the email to the Houston Police Department investigator.

34. The case was immediately dropped and Amstutz was returned to full duty with the Montgomery County Precinct 4 Constables Office.

35. Amstutz inquired with the detective about filing charges against Nickolette for filing a false report, however, the detective, playing on Amstutz heartstrings, talked him out of it due to Nickolette being pregnant at the time.

36. Jose and Nickolette Amstutz attended counseling, reconciled, and the divorce proceedings were dropped.

37. On or about August 21, 2021, Amstutz began working for Harris County Precinct 6 Constables Office.

38. In 2022, Jose and Nicolette Amstutz were both members of Thin Blue Line Law Enforcement Motorcycle Club ("Thin Blue Line LEMC," "TBLLEMC," or, "Club").

39. On or about May 1, 2022, Amstutz, discovered text messages, including photos, that indicated his wife, Nickolette Amstutz, was having extramarital affairs with members of the Thin Blue Line LEMC.

40. The text messages were between a male TBLLEMC member with the moniker "Hellhound," his girlfriend and TBLLEMC member with the moniker "Hellcat," and Nickolette Amstutz.

41. On or about May 4, 2022, Amstutz confronted Nickolette with the evidence he discovered, of her extra marital transgressions with other members of the Motorcycle Club.

42. Nickolette Amstutz denied, then admitted her affair and told Amstutz she "took care of it."

43. Nickolette Amstutz then called Shay, aka, "Hellcat" on speaker phone in which "Hellcat" admitted to Amstutz and apologized for the extramarital transgression.

44. Amstutz informed Nickolette that he was going to have to report the affair to the TBLLEMC chapter president and to the by-law and code of conducting enforcement department referred to as the Nation.

45. Nickolette threatened Amstutz that if he reported the members transgressions that the marriage was over.

46. Amstutz contacted the TBLLEMC Chapter President and requested a leave of absence from the club.

47. On or about May 5, 2022, Nickolette Amstutz tried to engage in a sexual act with Jose Amstutz.

48. Due to the recent revelations Amstutz was unreceptive and denied, multiple times, Nickolettes advances.

49. Nickolette was unrelenting, and Jose Amstutz finally exclaimed "Okay, if you want to s@?k it then call me "Hellhound"."

50. Nickolette Amstutz became upset and yelled at Jose Amstutz to leave the home.

51. Amstutz left the home for a brief time.

52. While gone, Nickolette Amstutz called two members of the TBLLEMC to come over to the home.

53. Amstutz returned home to find TBLLEMC member Amanda Smith, aka, "Voodo," TBLLEMC member "Ladybug," and Ms. Smith's daughter (name unknown), present at his home.

54. Amstutz inquired as to why Amanda Smith and the others were at his home.

55. Amanda Smith proclaimed, "because you're not going to lay another hand on Nickolette."

56. Amstutz explained that was a fabrication and he had never placed his hands on Nickolette.

57. Nickolette and Amanda Smith then pleaded with Amstutz not to report Nickolette, "Hellhound," and "Hellcat's" transgression to TBL Nation.

58. Amstutz then left the home again and called the TBLLEMC chapter President informing him of the transgressions.

59. Amstutz removed himself from the marital bedroom and began residing in the downstair portion of the home.

60. On or about May 25, 2022, Amstutz hired an attorney and filed a petition for divorce from Nickolette Amstutz.

61. Amstutz informed his immediate supervisor and Precinct 6 Internal Affairs Division of the divorce.

62. In April 2022, due to the previous false allegation and subsequent retraction from Nickolette Amstutz, the second false allegation and admission of such, her displayed behavior at the time, and the fact that Amanda Smith expressed Nickolette's current unfounded and fictitious claim, at his home, Mr. Amstutz informed his superiors at the Constables Office including Chief Deputy Lillian Lozano and the Internal Affairs Division that Nickolette would likely demonstrate the same behavior and submit a false police report of criminal behavior.

63. On or about June 27, 2022, Nickolette, along with other members of TBLLEMC acted in concert together to make a false report against Jose Amstutz in attempts to sabotage Amstutz career as a Law Enforcement Officer and gain custody of the children in the commencing divorce proceedings.

64. On or about June 29, 2022, Amstutz was contacted by Detective Andrew Henderson of the Houston Police Department regarding a report of Domestic Abuse levied against him on or about June 27, 2022, by Nickolette Amstutz.

65. On or about June 29, 2022, as soon as he was informed by Detective Henderson of the matter, Amstutz immediately notified his agency, Harris County Precinct 6 of the allegations and investigation.

66. On or about June 29, 2022, Amstutz received a letter from the desk of Internal Affairs Division Supervisor Lieutenant Paul Fernandez and signed by Lt. Fernandez stating Amustuzt was being placed on temporary suspension, without pay, "pending investigation."

67. On or about June 29, 2022, members of Harris County Precinct 6 Constable Office came to Amstutz home and took possession of his K-9 Partner, patrol vehicle, badge, ID, and other department issued equipment.

68. On or about July 26, 2022, Amstutz received a letter from the desk of Lt. Paul Fernandez signed by Constable Silvia Trevino stating they conducted an investigation of possible policy violations and notified Amstutz he was relieved of duty and terminated under a TCOLE General Discharge.

69. There are three categories on the F5R form a TCOLE Officer may be discharged under which are Honorable, General, or Dishonorable.

70. Honorably discharged means a license holder who, while in good standing and not because of pending or final disciplinary actions or a documented performance problem, retired, resigned, or separated from employment with or died while employed by a law enforcement agency.

71. Generally discharged means a license holder who: (A) was terminated by, retired or resigned from, or died while in the employ of a law enforcement agency and the separation was related to a disciplinary investigation of conduct that is not included in the definition of dishonorably discharged; or (B) was terminated by or retired or resigned from a law enforcement agency and the separation was for a documented performance problem and was not because of a reduction in workforce or an at-will employment decision.

72. Dishonorably discharged means a license holder who: (A) was terminated by a law enforcement agency or retired or resigned in lieu of

termination by the agency in relation to allegations of criminal misconduct; or (B) was terminated by a law enforcement agency or retired or resigned in lieu of termination by the agency for insubordination or untruthfulness.

73. Generally discharged categorization is virtually a law enforcement employment "death sentence"[1]

74. Constable Trevino was aware of the "death sentence" nature of a General Discharge due to her close involvement with the Patel v. Trevino case.

75. On or about August 4, 2022, the Harris County District Attorney's office released their Intake Disposition Report.

76. The investigating District Attorney concluded that the complaining witness, Nickolette Amstutz, lacked credibility due to video evidence contradicting her complaint provided by Amstutz.

77. The District Attorney exonerated Amstutz from any criminal wrongdoing and declined to bring charges.

78. On or about October 17, 2022, Precinct 6 IAD Supervisor Lt. Paul Fernandez was terminated amid child sexual assault accusations.

79. On or about November 10, 2022, former Lt. Paul Fernandez was criminally charged with indecency with a child sexual contact.

80. Constable Silvia Trevino failed to train or supervise Internal Affairs Division Supervisor Lt. Paul Fernandez.

81. That failure to train or supervise was done with deliberate indifference or gross negligence.

83. Constable Trevino's indifferent or negligent failure to train or supervise Fernandez, a uncredible officer, resulted in Amstutz termination.

84. Although plaintiff has diligently sought other employment, he has been unable to find a job.

---

[1] During plaintiff's job search it has been discovered that law enforcement agencies have indicated on their job postings that applicants having been Generally Discharged will not be considered for employment.

85. In addition, plaintiff has incurred expenses in seeking other employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by defendant.

86. We adopt the previous statements of fact for each charge alleged in this petition.

### F. Count 1 – Discrimination Under Title VII

87. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, namely male, and of a certain age.

88. Defendant is an employer within the meaning of Title VII.

89. Defendant intentionally discriminated against plaintiff because of his sex and age by firing him for reporting the making of a false police report given by his wife at the time.

90. Other similarly situated employees were treated more favorably than the Plaintiff

### G. Count 2 – Violation of Age Discrimination in Employment Act

91. Age Discrimination in Employment Act is evaluated in the same framework as Discrimination under Title VII.

92. Plaintiff is within the protected class as he is over 40 years old.

93. Plaintiff, as a licensed TCOLE officer, was qualified for the position

94. Defendant intentionally discriminated against plaintiff because of his sex and age by firing him for reporting the making of a false police report given by his wife at the time.

95. Plaintiff was treated less favorably than similarly situated younger employees.

### H. Deprivation of Rights, Privileges, and Immunities in violation of Title 42 U.S.C. § 1983

96. Defendant, a state actor, arbitrarily deprived Plaintiff of his employment, a tangible interest, by failing to train or supervise its employees, thereby violating Plaintiff's rights to substantive due process under the 14th amendment to the Constitution of the United States of America.

### I.  Damages

97. As a direct and proximate result of defendant's conduct, plaintiff suffered the following injuries and damages.

    a. Plaintiff was discharged from employment with defendant.  Although plaintiff has diligently sought other employment, he has been unable to find a job.  In addition, plaintiff has incurred expenses in seeking other employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by defendant.

    b. Plaintiff suffered mental anguish and emotional distress in the form of depression, insomnia, fatigue, anxiety, social isolation, loss of appetite.

    c. Plaintiff suffered physical illness in the form of dramatically increased blood pressure, severe headaches, and chest pain.

### J.  Attorney Fees

98. Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k).

### K.  Prayer

99. For these reasons, plaintiff asks for judgment against defendant for the following:

    a. Temporary Injunctive relief reinstating Amtutz, pending trial, to his previous position.

    b. Permanent Injunctive relief that his rights will not be further violated.

    c. Monetary relief.

    d. Costs for reasonable attorney fees.

    e. Costs of suit.

    f. All other relief the court deems appropriate.

## L.  PLAINTIFF'S DEMAND FOR JURY TRIAL

100. Plaintiff, Jose Amstutz, asserts his rights under the Seventh Amendment to the U.S. Constitution and demands, in accordance with Federal Rule of Civil Procedure 38, a trial by jury on all issues.

Respectfully submitted,

Watts & Company, Lawyers Limited.

*/s/ Larry Watts*
Laurence Wade ("Larry") Watts
SBN 20981000, FID 7092
P.O. Box 2214
Missouri City, Texas 77459
Phone (281) 431-1500
Facsimile (877) 797-4055
wattstrial@gmail.com

and

Mikal D. Williams
Texas Bar No. 24107965
P.O. Box 2214
Missouri City, Texas  77459
Telephone: (281) 306-6801
Cell: (832) 425-4393
Email:
mikal.d.williamsjd@gmail.com

**ATTORNEYS FOR PLAINTIFF**