IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF TEXAS,
HOUSTON DIVISION

| | | |
|---|---|---|
| Jose E. Amstutz, | § | Civil Action No. |
| Plaintiff, | § | 4:23-cv-01787 |
| | § | |
| v. | § | Judge Charles Eskridge |
| | § | |
| Harris County, Texas, | § | |
| Sylvia Trevino, and | § | |
| Lillian Lozano | § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## PLAINTIFF'S SECOND AMENDED ORIGINAL COMPLAINT

### A.  Parties

1.     Plaintiff, Jose E. Amstutz ("Amstutz"), is an individual and formerly employed by Harris County as a deputy constable in Precinct 6 .

2.     Defendant, Harris County ("HCO"), a governmental organization and acting as an employer under color state law, has been served by electronic service to the county attorney at CJOservice@cjo.hctx.net.

3.     Defendant, Precinct 6 ("P6") Constable Sylvia Trevino ("Trevino"), is a resident of Harris County and has been served at her place of business at 5900 Canal Street, Houston, TX 77011.

4.     Defendant, P6 Chief Deputy Constable Lillian Lozano ("Lozano"), is voluntarily dismissed in a separate a resident of Harris County and has been served at her place of business at 5900 Canal Street, Houston, TX 77011.

### B.  Jurisdiction

5.     The court has jurisdiction over the lawsuit pursuant to Title 28 § 1331.

### C.  Venue

6.     Venue is proper in this district because the alleged unlawful acts were committed in this district.

7.     Plaintiff is a Texas Certified Peace Officer and after approximately 19 years in law enforcement and 14 years in Montgomery County, he was employed by HCO P6 from August 21, 2021 through July 26, 2022, when he was wrongfully terminated by Silvia Trevino on recommendation of P6's Internal Affairs Division ("IAD"), Paul Fernandez ("Fernandez") and Melissa Mendietta ("Mendietta") and Lozano.

### D.
### Summary of Claims

8.     Plaintiff is presenting two causes of action herein, towit: a Title 42 2000(e) claim against HCO; and Title 42 §1983 claims against Trevino in her respective official and individual capacities, and HCO under the *Monell* doctrine, for violations of the Fourteenth Amendment, in deprivation of Plaintiff's rights to due process, both substantive and procedural.

9.     The Defendants Trevino and Harris County acted in civil conspiracy to terminate Plaintiff for illegal and unconstitutional reasons, and to retaliate against Plaintiff further by arbitrarily assigning to him a "General Discharge" instead of "Honorable

Discharge", and unreasonably and arbitrarily interpreting its own policies.

10.    Defendant Harris County has a widespread practice tantamount to official policy to permit Constable's in Precinct 6, especially Constable Trevino, a Department Head covered by the County Policies, § 1.05 (i), to act arbitrarily and in violation of Section 2, Personnel Policies made effective March 12, 2022, specifically §§ 2.01-2.03, by arbitrarily interpreting County or Precinct policies to effect the termination of Plaintiff's employment benefits and or employment.

11.    Harris County and or Trevino deprived Plaintiff of rights secured to him by the Fourteenth Amendment to the United States Constitution, with the deprivation being committed with deliberate indifference to Plaintiff's rights by Constable Trevino acting under color of state law; further, Harris County's aforementioned policies amounted to deliberate indifference to Plaintiff's constitutional right to be free from arbitrary interpretation by Defendants, and that Harris County's policy by custom or practice was the moving force behind the constitutional violation inflicted on Plaintiff.

## E. FACTS AND CAUSES OF ACTION

12.    On October 23, 2023, Administrative Law Judge Erin Bakker after hearing evidence from Harris County Precinct 6 and Plaintiff, Jose Amstutz in SOAH Docket No. 407-22-09532, made the following findings of fact, which are adopted and incorporated by reference herein, and to which this Court should give great deference:

a. "1. Jose E. Amstutz (Petitioner) holds a peace officer's license issued by the Texas Commission on Law Enforcement (TCOLE), or a predecessor agency.

b. "2. Petitioner began his employment with the Harris County Constable's Office, Precinct 6 (Constable's Office) on August 21, 2021, and was terminated on July 26, 2022.

c. "3. On August 2, 2022, the Constable's Office filed an F-5 Report of Separation of Licensee (F-5 Report) with TCOLE indicating that Petitioner had received a general discharge.

d. "4. On August 15, 2022, Petitioner filed a petition with TCOLE requesting to change the F-5 Report designation to an honorable discharge.

e. "5. On August 30, 2022, TCOLE referred the matter to the State Office of Administrative Hearings (SOAH) and issued a notice of hearing advising Petitioner and the Constable's Office that the matter would be the subject of a hearing before a SOAH Administrative Law Judge (ALJ),

e. "6. SOAH set the case for a hearing on the merits to convene via videoconference on November 4, 2022, which resulted in a Default Decision and Order being issued.

f. "7. The Constable's Office filed a Motion for Rehearing which was granted by the ALJ, and an order setting the hearing for August 31, 2023, was issued.

g. "8. Together, the TCOLE notice and the ALJ's order setting the hearing contained a statement of the time,

place, and nature of the hearing; a statement of the legal authority and jurisdiction under which the hearing was to be held; a reference to the particular sections of the statutes and rules involved; and a short, plain statement of the factual matters asserted or an attachment incorporated by reference of the factual matters asserted in the complaint or petition filed with the state agency.

h. "9. On August 31, 2023, ALJ Erin Bakker conducted the hearing on the merits.Petitioner appeared and was represented by attorney Amanda Bolin. Deputy Melissa Mendietta appeared for the Constable's Office which was represented by Harris County Assistant County Attorney, Susana Sosa. The record closed the following day after the efiling of admitted exhibits.

i."10. On June 28, 2022, the Constable's Office was contacted by the Houston Police Department (HPD) and the Montgomery County Sheriff's Office (MCSO) notifying them that Petitioner's wife had filed a police report that he had physically and sexually assaulted her.

j. " 11. Petitioner was unaware that his wife had filed charges, and he had contacted the MCSO the evening of June 28 seeking a welfare check because he could not get in contact with her.

k. " 12. Petitioner was called by a HPD detective early in the morning of June 29, and informed of his wife's police report the previous night. Petitioner immediately notified his supervisor and attempted to call the Internal Affairs

Division (IAD), but he had to leave a voicemail.

l. "13. On June 29, the Constable's Office began an IAD investigation of Petitioner based on his wife's police report and placed him on administrative leave.Petitioner was also given a list of the policy violations he was being investigated for potentially violating.

m. "14. After receiving the IAD complaint against him, which stated Petitioner had been involved in a physical and sexual assault of his wife that was reported to HPD and MCSO, Petitioner met with IAD and gave a written statement.

n. " 15. The Constable's Office had HPD run a report of all of their calls for service to Petitioner's home. Between May and July 2022 there were six calls for service. These calls related to retrieval of property, a welfare check, verbal arguments, and disagreements over marital property. None of the calls involved family violence or allegations of any criminal activity.

o. " 16. Petitioner cooperated with both the Constable's Office IAD investigation and the HPD criminal investigation.

p. "17. HPD detectives determined that Petitioner's wife's accusations were not credible, and the Harris County District Attorney's Office declined to file criminal charges against Petitioner.

q. "18. The Constable's Office has an Off-Duty Conduct policy that requires employees to "report any personal involvement in civil matters, minor infractions, or misdemeanors not involving personal injury or property damage, to their supervisor immediately upon the employee's return to work," and to immediately report "incidents of a more serious nature."

r. "19. Petitioner complied with the Off-Duty Conduct policy by immediately notifying the Constable's Office of his wife's allegation of criminal assault.

s. "20. **The Off-Duty Conduct policy did not require Petitioner to notify the Constable's Office of the other six calls for service to his home, or his request for a welfare check on his family.** (Empasis added)

t. "21. The Constable's Office has a Misconduct policy that states "Any activity, behavior, or action ... that tends to brings [sic] the Agency into public discredit, or which tends to have an adverse effect on the employee's ability to perform duties efficiently and effectively[,] is prohibited."

u. "22. The Constable's Office has an Unlawful or Offensive Conduct policy that prohibits "[e]ngaging in unlawful or offensive conduct, on or off the job[,] that could adversely affect the professional reputation of the agency or Harris County."

v. "23. The Constable's Office has a Conduct Unbecoming an Employee policy that prohibits "[a]ny activity, behavior, or action of an employee that has the obvious potential to adversely affect, lower, or destroy public respect or confidence in the Agency."

w. "24. **Petitioner's involvement in the reports and calls to MCSO and HPD did not tend to bring public discredit to the Constable's Office or have the potential to adversely affect its professional reputation. No violation of the Misconduct, Unlawful or Offensive Conduct, or Conduct Unbecoming an Employee policies was shown.** (Emphasis added)

x. " 25. **The Constable's Office has an Untruthfulness policy that states "[k]nowingly and willfully being untruthful in order to conceal or mislead the course of any criminal or administrative investigation is prohibited."** ( Emphasis added)

y**. " 26. Petitioner did not knowingly mislead or conceal information from IAD during its investigation. No violation of the Untruthfulness policy was shown.** ( Emphasis added)

z. "27. **The Constable's Office alleged that Petitioner violated a Sound Judgment policy, but that policy was not included in the Constable's Office's General Orders on Disciplinary**

**Procedure or otherwise established by the evidence.** ( Emphasis added)

aa. **"28. The preponderance of the evidence did not establish that Petitioner violated any of the Constable's Office's policies that were sustained in the IAD investigation or that he committed any other type of misconduct.** ( Emphasis added)

13.    Judge Bakker, the SOAH Judge was deciding a point that is pivotal to cause existed for Defendant's termination of Plaintiff.

14.    Judge Bakker's findings of fact are supported by substantial evidence on the record as a whole, and results from Judge Bakker 's application of the proper legal standard; therefore while Judge Bakker did not consider whether the Defendant's actions on the facts she found violated "Title VII" , or the United States Constitution, *Judge Bakker's findings do establish*, vis a vis that the reasons given for terminating Plaintiff were not founded on  reasoned analysis and were pretextual.

15.    Defendant falsely charged and terminated Plaintiff's employment when he was a member of protected classes, male and above the age of 40, and highly qualified for his employment position as a "K-9 Officer" assigned to work with Beny, the canine.

16.    Defendant replaced Plaintiff by a much younger, inexperienced and less qualified person, Luis Acuna, who was assigned to work with Beny.

17.    The original reason given by Defendants for suspending Plaintiff was to allow for an investigation into the allegations made by

Plaintiff's estranged wife Nickolette that he had physically and sexually abused her.

18.    Nickolette had a history of being a serial adultress and false reporter of domestic violence against Plaintiff.

19.    The false reports by Nickolette were triggered by Plaintiff's filings for divorce when he would learn that she had again committed adultery and filed for divorce.

20.    When Plaintiff accepted employment at Harris County Precinct 6, he and Nickolette were living together with their five (5) children conditioned on Nickolette's solemn promise that she had reformed and given up her profligate habits.

21.    Upon acceptance of employment by Harris County as the Pct.'s. K-9 officer with partner Beny, Plaintiff alerted the command staff of his wife's habits and past acts of admitted and established *false reportings* when he had been a K-9 officer in Montgomery County police agencies.

22.    When in May 2022 Plaintiff happened on proof that established his wife had foregone her profligacies, he alerted Pct. 6 command that he was going to file for a divorce and that Nickolette would in all likelihood resort again as she had in the past to false accusations of domestic abuse.

23. Plaintiff filed for divorce and sought custody of the couples five (5) children.

24. Nickolette resumed her routine of false reportings, and when notified of the latest reporting, Plaintiff immediately informed his supervisors at Pct. 6.

25. Plaintiff was immediately suspended without salary by Trevino through her then IAD director pending the outcome of the investigation into Nickolette's charges of domestic violence, which outcome would determine Plaintiff's future employment with Harris County and Pct. 6.

26. The investigation found that Nickolette was incredible and the Houston Police Department and Harris County District Attorney when faced with hard evidence of Nickolette's perfidious report refused to accept or file charges against Plaintiff.

27. That decision should have been the end of it and Plaintiff as promised should have been returned to work with Beny, but Defendants switched gears and decided to come up with a different reason to keep Plaintiff unemployed, besides Trevino wanted the young Acuna in Plaintiff's job.

### Re: Title VII - Exhaustion of Administrative Procedures

28. Plaintiff timely filed a charge of discrimination against HCO with the Equal Employment Opportunity Commission ("EEOC"), Charge of Discrimination Number 460-2023-02482 on January 19, 2023, claiming continuing discrimination for the following: Retaliation; Age; Sex; and Other (hostile work environment).

29. Plaintiff presents in this case claims that he was discriminated only because of his Age, and Sex (Gender); EEOC had reasonable opportunity to investigate Plaintiff's charge of discrimination and issued a Notice of a Right to File a Civil Action against HCO.

30. Plaintiff filed this complaint within 90 days after receiving Notice of a Right to File a Civil Action from the EEOC.

31.    A copy of the notice of the right to sue and EEOC complaint has been previously attached to a pleading and are incorporated by reference herein.

32. Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the statute, and primarily because he is an *older male worker*.

  a.    Plaintiff was born on March 22, 1980, and with approximately 19 years as Certified Peace Officer and 8 years as a K-9 Officer.

  b.    Gender and/or age were motivating factors in the termination of Plaintiff's employment.

  c.    Plaintiff was replaced on or about July 29, 2022 as P6 K9 officer with a male, Luis Acuna ("Acuna"), as P6' K-9 officer and was given Plaintiff's canine partner Beny.

  d.    Deputy Luis Acuna who was born on or about the year 2000, had been invested in Pct. 6 by Trevino on August 16, 2021. The photograph below is of Constable Trevino and Deputy Acuna on the day of his investiture.

.



e.    Defendant Trevino favored and gave credit to accusations of Nickolette Amstutz over her Plaintiff's defense and over Houston Police Department's anticipated investigatory results of Nickolette's accusations against Plaintiff, because she is a female.

33.  Defendant HCO was an "employer" within the meaning of Title VII.

34.  Plaintiff was replaced by a much younger and significantly less qualified Deputy, Luis Acuna.

35. Defendants gave a  second set of pretextual reasons for terminated Plaintiff.

36. Jose Amstutz, like the old Testament prophet Josea was repeatedly betrayed by his wife and at then HCO and Trevino picked up where Nickolette left off, and has betrayed Jose Amstutz again.

**Regarding Plaintiff's 1983 Claims:**

37. Neither Harris County Commissioner's Court nor Constable Trevino "..request[ed] [the County Attorney] to give a written opinion or written advice relating to the official duties of Constable Trevino as related to the termination of Plaintiff's employment or assignment of separation status of Plaintiff pursuant to Tex. Gov't Code § 41.007.

38.  Texas law provided at all material times hereto the functions of the County Attorney of Harris County to be representation of the state, Harris County, and the officials of Harris County in all civil matters pending before the courts of Harris County and any other courts in which the state, the county, or the officials of the county have matters pending...

39.    The only control that the Commissioner's Court had Over Trevino's management of Deputy Constables was the funding of positions for Deputy Constables and funding of County benefits, because Texas law states, "An elected constable who desires to appoint a deputy must apply in writing to the commissioners court of the county and show that it is necessary to appoint a deputy in order to properly handle the business of the constable's office that originates in the constable's precinct. The application must state the name of the proposed deputy. The commissioners court shall approve and confirm the appointment of the deputy only if the commissioners court determines that the constable needs a deputy to handle the business originating in the precinct." Tex. Loc. Gov't Code § 86.011

40.    At all times material hereto, Constable Trevino was the Harris County policymaker in the matters of hiring (to a County funded position), and firing of Plaintiff.

41.    Precinct 6's ("Pct. 6") Internal Affairs Division ("IAD"), composed of Lt. Paul Fernandez and Sgt. Melissa Mendietta, was at all times material hereto supervised by Pct. 6 Deputy Constable Chief Deputy Lillian Lozano, who was a direct report to Trevino.

42.    Pct. 6 Constable through Pct. 6's IAD Lt. Paul Fernandez as lead internal investigator, had a duty to make a reasonably thorough investigation in the absence of exigent circumstances into Plaintiff's pre-employment reports that Nickolette Amstutz had previously made two (unprosecuted) TPC 37.08 false reports of domestic violence against Plaintiff each within 30 days of Plaintiff's having filed for a divorce from Nickolette for adultery; and she made the False Reports to jeopardize Plaintiff's employment as a Montgomery County Peace Officer.

43.    Plaintiff reported both pre-employment and post-employment to authorized members of the Chain of Command of Pct. 6 that based on Plaintiff's knowledge of Nickolette Amstutz, she would more likely than not make another TPC 37.08 false report of

domestic violence against Plaintiff if he again filed for a divorce, to jeopardize his employment as a Harris County Pct. 6 Peace Officer.

44.   Pct. 6 Constable failed to conduct reasonable training and or supervision of Pct. 6 officer(s) responsible for background investigation of new hire Deputies who reported pre-employment facts as stated by Plaintiff that a spouse had like Nickolette Amstutz previously had serially made False Reports against him when he had previously filed for divorce of Domestic Violence by Plaintiff to a Montgomery County peace officer purposed by her to jeopardize his employment as a Montgomery County Deputy Sheriff , and would more than likely make another False Report if he again filed for a divorce.

45.   Pct. 6 Constable's failure to supervise or train Pct. 6 officer(s) Fernandez and Mendietta, who were responsible for background and personnel investigations of Deputies, and to whom Plaintiff had reported in writing the facts of June 27, 2022 as stated by Plaintiff, caused the injury by Defendants:

  a.   In a pre-employment disclosure to Pct. 6, Plaintiff was required to give previous divorce orders to Pct. 6 IAD Lt. Paul Fernandez;

b.    After the False Report was publicized to Plaintiff on June 29, 2022, Plaintiff prepared a 12 page typed statement entitled "**Jose (age 42) & Nickolette Amstutz (age 31) Divorce Timeline and events of Monday 06.27.2022**", and gave it along with various of the documents in his pending divorce and custody action with Nickolette Amstutz in the 309th District Court of Harris County;

c.    Lt. Fernandez took the documents, and looked at them and handed them back to me saying, "**I don't need these. All I need is the final report of HPD**";

d.    Plaintiff accepted the documents he had tendered to Lt. Fernandez and said that he had thought they should be turned in and Lt. Hernandez replied again, "**No. All I need is the final HPD report**.";

46.    In the 12 page typed statement entitled "**Jose (age 42) & Nickolette Amstutz (age 31) Divorce Timeline and events of Monday 06.27.2022**", the events of June 27, 2022 were reported by Plaintiff in writing, and the report was also a plea for help by Plaintiff for the emotional trauma he was experiencing as the result of his vengeful wife.

47.     Pct. 6 IAD Deputy Sgt. Melissa Mendietta was assigned to manage Plaintiff's challenge to his separation rating of General Discharge by Trevino, after her supervisor, IAD Deputy Lt. Paul Fernadez was arrested (indecency with a child) and fired.



https://abc13.com/harris-county-crime-precinct-6-former-lieutenant-charged-paul-fernandez-indecency-with-child-sexual-contact-charge/12439029/ .

48.     It is believed that because of psychological projection, Lt. Fernandez had recommended Plaintiff be "Dishonorabl[y] Discharge[d]",  but according to Sgt. Mendietta , Constable Trevino lessened the  "Dishonorable Discharge" to a "General Discharge" to help Plaintiff get a job.

49.     Mendietta's supervisor Chief Deputy Lozano has testified that Texas law states a General Discharge is defined as,

"Was terminated by, retired, or resigned from
or died while in the employment of a law enforcement
agency and the separation was related to a disciplinary
investigation of conduct that is not included in the
definition of dishonorable discharge, or was terminated
by or retired or resigned from a law enforcement agency
and the separation was a documented performance problem

and was not because of a reduction in workforce or
at-will employment decision."

50.    Lt. Paul Fernandez and Sgt. Melissa Mendietta's
supervisor Chief Deputy Lozano has confirmed in other litigation,
"A person generally is less favored in hiring if they have a general
discharge [instead of] an honorable discharge. There would be a
question, that the potential new employer is going to ask as a result of
that choice …"

51.  Despite Mendietta's testimony to the contrary during
Plaintiff's recent challenge, the General Discharge made Plaintiff less
desirable in hiring by a police agency, and constituted an arbitrary
and adverse action in additional to Plaintiff having been terminated
by Trevino, as has been conceded by Chief Deputy Lozano.

52. At the time of his termination by HCO acting through
Trevino as a policymaker for P6, and Lozano as a policymaker for P6,
Amstutz had been licensed by the Texas Commission of Law
Enforcement (TCOLE) as a Texas Peace Officer for more than 19
years, and until his termination with "General Discharge" had a
career in law enforcement.

53.    At the time of his termination by HCO acting through
Trevino as a policymaker for P6, and Lozano as a policymaker for P6,
Amstutz was not terminated "at will", but for cause.

54.    Defendant's have effectively admitted by Defendants'
counsel, in a State Office of Administrative Hearing ("SOAH") to
Administrative Judge Erin Bakker, Docket number 407-22-09532 on
or about August 30, 2023, that Plaintiff Amstutz had an protected
interest in his continued employment by P6 subject to the IAD

investigation determining whether he had violated an HCO or P6 policy, towit:

"On July 13th, 2022, petitioner submitted an affidavit to ID in response to the allegations. Nevertheless, while petitioner provided specific information regarding one incident where H P D contacted him on his wife allegations and another incident when H P D responded to a call for service at his house, petitioner chose not to disclose to IAD various calls for service where police responded to his house for similar allegations or family disturbance that were close in time to June 29th, 2023. He didn't even report [00:05:30] those calls for service to his supervisor as required by Policy Constable Prison six learned about petition violations through the reports and calls for service from other agencies, specifically Houston Police Department in the Montgomery County Sheriff's Office. ***Given the findings of the disciplinary investigation petition was terminated from his employment on July 20th, 2020*** following the requirement of the Texas [00:06:00] Occupations Code Constable Precinct six completed and submitted the F five separation of licensee .. selecting general discharge as a separation designation. Today the preponderance of the evidence will show that Constable Precinct six properly designated a general discharge to petitioner's F five separation Constable Precinct six respectfully requests that the honorable judge affirm the designation presented to TLE of general discharge in this case." (Emphasis added)

55.    Plaintiff's employment was admittedly conditioned on the results of an accurate and complete investigation by P6's IAD of charges against him for allegedly violating a P6 rule or order on two occasions while he was on suspension to be terminated, and not the reason for the suspension.

56.    The reason Plaintiff was suspended on June 28, 2022 by P6 pending his indefinite suspension arose out of a false complaint to the HPD by Plaintiff's estranged wife that he had sexually assaulted her and forced her to perform a sexual act; as a result of recordings made by Plaintiff of the encounter, the claims by his estranged wife were rejected by both the HPD, and the Harris County District Attorney's Office, on August 4, 2022.

57.    Eager to terminate Plaintiff, Defendant's although charging him with unlawful and misleading P6 IAD investigators in their investigation of any **criminal or administrative investigation,** Trevino acting on recommendation of Lozano and the IAD which she supervised, arbitrarily terminated Plaintiff on July 26, 2022 and assigned to him the career disabling TCOLE F-5 Discharge Status of General Discharge.

58.    Unwilling to await the outcome of the HPD investigation into the criminal charges of Plaintiff's estranged wife, which was announced on or about August 4, 2022, Defendants secretly altered their termination charges against Plaintiff.

59.    The new charge about which Plaintiff had not been noticed was his having intentionally failed to report two events which occurred during his suspension when Nickolette Amstutz appeared at

the marital home to retrieve items of her property and accompanied by HPD Civil Standby officers.

60.    The P6 policy requires only "Employees shall report any personal involvement in civil matters, minor infractions or misdemeanors not involving personal injury or property damage to their supervisor *immediately upon the employee's return to work*. **All incidents of a more serious nature are to be reported immediately**."

61.    It is undisputed that Plaintiff: had not returned to work from suspension; had never been informed by HCO or P6 policy identified Civil Standby officers during an exchange of property to constitute an "**incident[s] of a more serious nature**"; had properly reported all "incidents of a more serious nature"; had no notice of the change in termination charges against him by P6; had not been given reasonably specific notice of the altered (charges against him); and the only calls that Plaintiff had not notified anybody of during that time period were on July 2, 2022 and on July 4, 2022, the two times that Plaintiff's estranged wife called for a civil standby for a  have a police escort to remove property, which occurred without incident.

62.    It is undisputed after terminating Plaintiff on July 26, 2022, and the HPD and Harris County District Attorney "Declining

Charge" of Plaintiff's estranged wife because of her lack of credibility on August 4, 2022, HCO challenged Plaintiff's request to obtain Unemployment Insurance to sustain himself and his five children and conceded to the State agency that Plaintiff was unaware he was still to notify P6 of the unreported incidents while he was on suspension.

63.    It is undisputed after terminating Plaintiff on July 26, 2022, and the HPD and Harris County District Attorney "Declining Charge" of Plaintiff's estranged wife because of her lack of credibility on August 4, 2022, HCO challenged Plaintiff's request to obtain Unemployment Insurance to sustain himself and his five children and conceded to the State agency that HCO and P6 policy in question does not speak to the situation of requiring Plaintiff to report the unreported events.

64.    Defendants alteration of the reasons for Plaintiff's adverse personnel action from the alleged criminal behavior (the false allegations made by Nickolette Amstutz, to a claim that Plaintiff failed to notify P6 of Nickolette's accompaniment by HPD officers as Civil Standby on July 2, 2022, and July 4, 2022 when visiting Plaintiff's home to retrieve personal items, is arbitrary.

65.    Defendant has never explained the reason for altering the reason for personnel action against Plaintiff, which is arbitrary, or not grounded in reasoned analysis.

## <u>Violation of Age Discrimination in Employment Act</u>

66.    Age Discrimination in Employment Act is evaluated in the same framework as Discrimination under Title VII.

67.    Plaintiff is within the protected class as he is over 40 years old.

68.    Plaintiff, as a licensed TCOLE officer, was qualified for the position

69.    Defendant intentionally discriminated and retaliated against plaintiff because of his sex and age by firing him for reporting the making of a false police report given by his wife at the time.

70.    Plaintiff was treated less favorably than similarly situated younger employees.

71.    Defendants, state actors, conspired to arbitrarily suspend and then terminate Plaintiff, altering reasons for their conduct without explanation; and on separation of Plaintiff from employment rated his separation as a *career killing* "General Discharge" .

72.    Defendants conspired to deprived Plaintiff of his employment, a tangible interest, by failing to train or supervise IAD Deputies Paul Fernandez and or Melissa Mendietta, employees, thereby violating Plaintiff's rights to substantive due process under the 14th amendment to the Constitution of the United States of America, without substantive or procedural due process.

## F.  Relief

### Damages

73.     As a direct and proximate result of defendant's conduct, prays for an award of monetary reimbursement for non-speculative and reasonable damages, past and future.

74.     Plaintiff suffered the following injuries and damages:

   a. Plaintiff was discharged from employment with defendant.  Although plaintiff has diligently sought other employment, he has been unable to find a job.  In addition, plaintiff has incurred expenses in seeking other employment and has had to pay for medical treatment that otherwise would have been covered by the health benefits plan offered by defendant.

   b. Plaintiff suffered and will suffer into the future mental anguish and emotional distress in the form of depression, insomnia, fatigue, anxiety, social isolation, loss of appetite.

   c. Plaintiff suffered and will suffer into the future physical illness in the form of dramatically increased blood pressure, severe headaches, and chest pain.

### Declaratory and Equitable relief

75.     Plaintiff prays that he receive declaratory relief in the Defendants be declared by the Court to have violated his rights under the Constitution and statute.

76.     Plaintiff prays that he be afforded permanent injunctive relief in that the Defendants be enjoined from further vfiolating his rights and that he be reinstated to his former position in P6.

## G.  Attorney Fees

77.    Plaintiff is entitled to an award of attorney fees and costs under Title VII, 42 U.S.C. §2000e-5(k), and or Title 42 § 1988 as prevailing party.

## H.  Prayer

78.    For these reasons, Plaintiff asks for judgment against Defendants for the following:

a. Permanent injunctive relief reinstating Amtutz to his previous position with all attendant benefits.

b. Declaratory relief whereby the Court would declare that Defendants have violated his Constitutional and Statutory Rights.

c. Monetary relief.

d. Reasonable and necessary attorney fees.

e. Costs of suit.

f. All other relief the court deems appropriate.

Respectfully submitted,

Watts & Company, Lawyers Limited.

*/s/ Larry Watts*
Laurence Wade ("Larry") Watts
SBN 20981000, FID 7092
P.O. Box 2214
Missouri City, Texas 77459
Phone (281) 431-1500
Facsimile (877) 797-4055
wattstrial@gmail.com
**ATTORNEYS FOR PLAINTIFF**

## <u>CERTIFICATE OF SERVICE</u>

I certify that a true and correct copy of this document has been served on opposing counsel on November 1, 2023, by filing with the Court's electronic filing scheme.

<u>*/s/ Larry Watts*</u>